Gradwell L. Sears v. Commissioner.
Sears v. Commissioner
Docket No. 47297.
United States Tax Court
T.C. Memo 1955-53; 1955 Tax Ct. Memo LEXIS 283; 14 T.C.M. (CCH) 182; T.C.M. (RIA) 55053; March 10, 1955
Samuel B. Brouner, Esq., for the petitioner. Maurice E. Stark, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent determined a deficiency of $37,822.16 in the petitioner's income tax for 1946 and an addition to tax under section 294(d)(2) of the Internal Revenue Code of 1939 of $3,874.08 for underestimating tax. The issues presented by the pleadings are the correctness of the respondent's action in determining (1) that a certain deposit of cash in the amount of $22,900 made by petitioner during the taxable year to one of his bank accounts was income, (2) that petitioner had income in the amount of $11,483 during the year from wagering transactions, and (3) that the deduction taken *284 by petitioner for traveling and entertaining expenses was overstated by $5,000. Issue (3) was abandoned by petitioner at the hearing. Findings of Fact The petitioner resides in Harrison, New York. His income tax return for 1946 was filed with the collector for the third district of New York. During 1946 petitioner was the executive vice-president and general manager of United Artists Corporation, New York, New York. United Artists is a distributor of motion pictures with sales offices in various cities in the United States, Canada, Europe and in some countries of Asia. In his capacity as vice-president and general manager petitioner was responsible for the production and distribution of motion pictures to exhibitors. He organized and attended sales conventions for exhibitors in numerous cities in the United States. As compensation for his services the petitioner received from United Artists during 1946 a salary of $156,000 and a bonus in excess of $30,000, or a total in excess of $186,000. Petitioner had no income from investments. During 1946 the petitioner engaged in numerous wagering transactions involving football games, golf, gin rummy, backgammon, bridge, poker, dice, *285 flipping coins and horse races. Some of the transactions were with friends and acquaintances and some were with one or more bookmakers. The petitioner did not, and did not attempt to, keep a record of his gains or losses on his various wagering transactions, and he does not now know the total amount of his gains or the total amount of his losses. Throughout 1946 petitioner maintained at the Chase National Bank, Forty-fifth Street Branch, New York, New York, sometimes hereinafter referred to as Chase, three accounts designated "G. L. Sears," "Gradwell L. Sears, Special," and "G. L. Sears, Tax Account," respectively. During May 1946 petitioner received in wagering transactions five checks totaling $11,483 which he cashed at the National City Bank of New York, Times Square Branch, sometimes hereinafter referred to as National City, on May 21, 1946. Thereafter, and on June 18, 1946, petitioner deposited cash in the amount of $22,900 in his account with Chase designated "G. L. Sears, Tax Account." The $11,483 and the $22,900 represented gross income to the petitioner from wagering transactions. Neither the $11,483 nor the $22,900 was reported by petitioner as income for 1946. During *286 1946 petitioner sustained losses totaling $29,770 on wagering transactions entered into by him in that year. In determining the deficiency in question the respondent determined that petitioner's income as reported was understated by $39,177.59, which was explained in the deficiency notice as follows: "(a) It is determined that the following items, which are taxable under Section 22(a) of the Internal Revenue Code, were omitted from the net income as reported by you for the year 1946. "Deposits made June 18, 1946
$22,900.00
Gambling gains
11,483.00
Bonus income *
4,794.59
Total
$39,177.59"
Opinion In his petition the petitioner assigned as errors the respondent's action in including in taxable income (1) the deposit in cash of $22,900 made on June 18, 1946, by petitioner in his account with Chase, and (2) the $11,483 received by petitioner on May 21, 1946, as the proceeds of five checks received by him in wagering transactions. In his allegation of facts in support of his assignments of error, the petitioner stated (1) that the $22,900 represented gross income from various wagering *287 activities but did not constitute taxable income because losses totaling $39,775 for the year from wagering transactions exceeded the $22,900 of income, and (2) that the $11,483 represented gross income from various wagering activities but did not constitute taxable income because losses totaling $39,775 for the year from wagering transactions exceeded the $11,483 of income. The petition was verified by petitioner and the verification contains the recital that petitioner had read the petition and was "familiar with the statements contained therein, and that the facts stated are true." In his answer the respondent denied having committed the errors assigned. He admitted the portion of the petitioner's allegation of facts to the effect that the amounts of $22,900 and $11,483 represented income to the petitioner but denied the portions thereof alleging that they were from wagering activities, and that the losses from such activities for the year amounted to $39,775. At the hearing and on brief petitioner's position is that the $22,900 represented earnings from various wagering activities, that that amount included the $11,483, that his losses from wagering activities for the year totaled *288 $29,770, and that since they were in excess of his gains from such activities for the year no portion of the $22,900 constituted taxable income. The respondent takes the position that the cash of $22,900 deposited by petitioner on June 18, 1946, represented gross income to the petitioner which was not reported, that the $11,483 was income to the petitioner from wagering transactions, and that petitioner has failed to show that he sustained any losses from wagering during the year. The respondent further contends that if we should find that petitioner sustained losses on wagering transactions for 1946 we should further find that such losses were not in excess of $11,483. From what has been said above, it is apparent that petitioner now takes a different position from that taken in his petition. Instead of the $22,900 and the $11,483 representing two separate amounts of income from wagering transactions as set out in the petition, the petitioner now contends that the $22,900 included the $11,483. Instead of losses from wagering transactions for the year having been $39,775 as set out in the petition, petitioner now contends that they amounted to $29,770. However, decision of the controversy *289 must be on the basis of the record presented. The petitioner testified at the hearing that the $22,900 represented income from wagering transactions. Such testimony is not inconsistent with the respondent's determination that the $22,900 represented unreported income of the petitioner from "Deposits made June 18, 1946." Likewise, petitioner testified at the hearing that the $11,483 represented income from wagering transactions. That testimony supports the respondent's determination that that amount represented unreported income of the petitioner from "Gambling gains." The foregoing situation brings us to the question as to whether the deposit of cash in the amount of $22,900 made on June 18, 1946, included cash in the amount of $11,483 received by petitioner on May 21, 1946. Petitioner testified that the latter amount of cash was included in the former. However, he further testified that upon receiving the $11,483 cash he kept it in his pocket and made no attempt to keep it separate from other cash funds in his pocket, and that during the period from May 21 to June 18, 1946, he went to different places, made various expenditures, and engaged in various wagering transactions. No *290 showing was made as to what amount of cash funds other than the $11,483 petitioner had, or placed, in his pocket during the foregoing period. Further, no showing was made as to what places the petitioner went, the amount of his out-of-pocket expenditures, or the extent, or results, of his wagering transactions during the period in question. The evidence shows that petitioner made no attempt to keep a record of the results of his wagering activities, that at times his wagering transactions were made under circumstances where cash passed, and that at times his wagering transactions involved large sums. In this state of the record, and in the absence of any explanation by petitioner as to how he was able to determine that cash of $11,483 received on May 21 was included in the deposit of cash of $22,900 made by him on June 18, we are unable to find that the $11,483 was so included. Having reached the foregoing conclusion, we have found that both the $22,900 and the $11,483, or a total of $34,383, constituted gross income derived by petitioner from wagering transactions. In support of his position that he sustained losses totaling $29,770 from wagering transactions during the taxable *291 year, the petitioner relies on 18 canceled checks totaling $29,770 submitted in evidence and his testimony relative thereto. These checks are in amounts ranging from $100 to $10,000 and bear dates ranging from January 28, 1946 to December 21, 1946. As to each check, the petitioner gave a detailed explanation of the circumstances under which it was issued and stated that it was a payment made in a wagering transaction. From a consideration of the evidence bearing on this issue we have found that during 1946 petitioner sustained losses totaling $29,770 on wagering transactions entered into by him during that year. In a recomputation of the deficiency that amount is to be deducted from the $34,383 which we have found was gross income to the petitioner from wagering transactions during the year. Decision will be entered under Rule 50. Footnotes
*. Not in controversy in the instant proceeding.↩